SMALL *v.* WILLIAMS.

1. Pertinent declarations made by a person whilst on his way to procure the execution of a mortgage to secure an antecedent debt or liability, the expedition having resulted in its procurement, are admissible in evidence against the mortgagee on the question whether the mortgage was procured by fraud or duress. They are a part of the *res gestæ* of the transaction, and consequently are admissible in evidence irrespective of the relation of agency between the mortgagee and the person who procured for him the execution of the mortgage.

2. The sayings of an alleged agent *dum fervet opus*, whilst not evidence to prove his agency, may be looked to on the question whether he was acting as agent, there being other sufficient evidence to establish the agency.

3. If the matter of a lengthy extract from the charge of the court is sound in part, any unsound part should be specifically pointed out in the motion for a new trial.

4. If declarations which require some answer or contradiction are made in one's hearing and he remains silent, his silence may be treated as signifying his assent to the truth or correctness of the statement.

5. A note and mortgage given in whole or in part upon an agreement, express or implied, to settle or prevent a criminal prosecution, are void, unless the case falls within some express statute authorizing settlement. The alternative of a legal proposition favorable to one party, if fairly given in charge, need not be in immediate connection with the alternative in favor of the other party.

6. No request being made to charge as to the burden of proof or the preponderance of evidence, mere failure to charge on these topics will not require a new trial. The evidence warranted the verdict. July 20, 1891. By two Justices.

Evidence.    Agency.    Practice.    Charge    of    court. Before Judge MILLER.    Bibb superior    court.    April term, 1890.

Reported in the decision.

R. W. PATTERSON and ROBERT HODGES, for plaintiff in error.

DESSAU & BARTLETT, *contra.*

SIMMONS, Justice.

Williams filed his bill in equity to set aside and cancel a mortgage and note given by him to Small, on the ground that they had been procured from him by duress and fraud. It seems that Williams's son John, at the time of the transaction, was an agent or drummer for Small, and had lost some eight or nine hundred dollars of Small's money at Reynolds, Georgia. He telegraphed his loss to Small, and Small employed Shackleford, a detective, to go to Reynolds and find the money or the thief. Shackleford and young Williams returned to Macon in the afternoon of the same day, and young Williams said to Small that the money was lost through his negligence, and proposed to secure Small by giving him his note, with his father-in-law as surety. Failing to get his father-in-law to sign the note as surety, he and Shackleford went to J. W. Williams, his father, and

procured him to sign the note. When it was delivered to Small he declined to accept it, on the ground that he had no knowledge of J. W. Williams's solvency. Young Williams then proposed to have his father secure the note by a mortgage on his farm, which Small said he would accept. The mortgage was prepared by Small's book-keeper, in Small's presence, and handed to Shackleford, the detective, and he and John Williams, the son, and DeLain, one of Shackleford's assistants, procured a carriage and started to the home of J. W. Williams, which was three miles in the country. On the way to the latter place, Shackleford called at the house of Subers, a magistrate, and got him to accompany them for the purpose of officially attesting the mortgage. Subers entered the carriage with Shackleford and the others, and while going to the house of J. W. Williams, Shackleford, in explanation of his reason for requiring the presence of Subers, said to him that Small had had young Williams arrested for embezzlement, that he had done away with some of his money at Reynolds, that he had applied to his father-in-law to stand his bond, and that he declined to do it, etc.,—saying this in an undertone so that Williams could not hear it. After arriving at the house of the elder Williams, and after he had signed the mortgage, Shackleford made other declarations. Counsel for Small objected to proof of the conversation between Shackleford and Subers, and the other declarations made at the house, (1) because they were irrelevant, and (2) because the declarations of Shackleford were inadmissible for the purpose of proving his agency.

1, 2. Under the facts above recited, we think the declarations of Shackleford were admissible for the purpose of illustrating the question of fraud or duress, which had been charged in the bill. Small would not take the note of the elder Williams without a mortgage.

He had it written and delivered it to Shackleford, the detective. It seems to have been a part of Shackleford's business to procure the signature of the elder Williams to the mortgage; and whether he was the agent of Small or not for this purpose, whatever he said in carrying out his object in procuring the signature to the mortgage was admissible. If he had been a mere volunteer to procure Williams to sign the mortgage, and did prou re him to sign it, his declarations would be admissible to illustrate the question whether he procured it by duress or fraud. It was a part of the *res gestæ* of the transaction. Taken in connection with the fact that young Williams told his father in the presence of Shackleford that if he did not sign the mortgage he would have to go to jail that night, it tended to show that Shackleford wished to produce the impression on the young man and the father that the former was charged with embezzlement, and would be put in jail unless the mortgage were signed.

(*a*) What Shackleford said at the time the mortgage was being executed or shortly thereafter, whilst not admissible to prove his agency, may be looked to on the question whether he was acting as agent, especially when there is other sufficient evidence to establish the agency.

3. The 4th and 5th grounds of the motion contain long extracts from the charge of the court, but no particular specifications of error are assigned thereon; there is simply a general assignment that the court erred in giving these charges. Where long extracts from the charge of the court are copied in the motion, and no particular part of the charge is specified as error, it is not our duty to hunt for errors in the charge. The rule is that these long extracts will not be considered unless the whole be erroneous. If the extract is sound in part, any unsound part should be specifically pointed out in the motion.

4. The attention of counsel for the plaintiff in error having been called to this rule by counsel for the defendant in error, during the argument, he undertook to show that the latter part of the extract from the charge contained in the 5th ground was erroneous. That part of the charge, in substance, is, that if the jury believed that Shackleford was in the position of a detective and representing Small, and that the young man, about the time the papers were signed, said to his father that if the latter did not sign the mortgage he (the son) would have to go to jail, and Shackleford was present and heard the words and made no reply, the old man had a right to believe from his silence that the son's statement was true. Instead of this being error, we think it sound law. If Shackleford was the agent of Small to procure this mortgage, as the evidence indicates that he was, and this declaration was made by the young man in his presence, it required an answer or contradiction from him. The evidence shows that the old man was very much excited by the appeal of his son. He was trembling and shedding tears, and he testifies that he signed the mortgage to keep his son from going to jail. Shackleford saw his excitement, and must have known the object of the father in signing the mortgage, and if he did not have the young man under arrest, it was his duty to so inform the father. He did not do this, but kept silent ; and the court was right in instructing the jury that the father had the right to believe from his silence that the son's statement was true. Code, §3790.

5. The court charged the jury, in substance, that if the mortgage was given partly to settle the criminal prosecution, and also to pay Small for the alleged shortage in the son's account, it would still be void. There was no error in this charge. A note or mortgage given in whole or in part upon an agreement, express or implied, to settle or prevent a criminal prosecution, is void

unless the case falls within some express statute authorizing settlement. If a part of the consideration of the contract is legal and the other part illegal, it renders the whole contract void. If, therefore, the mortgage was given partly upon an agreement to settle a criminal prosecution, whether that agreement was express or implied, and given partly to settle the debt of the son, it was illegal and could not be enforced by the mortgagee against the father. Code, §2745. The agreement to settle the criminal prosecution, the act charged being a felony, was illegal, and if such settlement entered into the consideration of the contract, it rendered the whole contract void.

It is complained also in this ground that the court failed to put the alternative proposition to the jury. While the charge as sent up in the record shows that the court did not put the alternative in immediate connection with this part of the charge, it is shown that the alternative was put subsequently. The alternative of a legal proposition favorable to one party, if fairly given in charge, need not be in immediate connection with the alternative in favor of the other party.

6. It is also complained that the court failed to charge as to the preponderance of testimony in civil cases, and to charge that the burden of proof was upon the plaintiff. No request having been made to charge as to the burden of proof or the preponderance of evidence, a mere failure to charge on these topics will not require a new trial.

The other grounds of the motion are the usual ones that the verdict is contrary to evidence, etc. We think the evidence warranted the verdict.

*Judgment affirmed.*