7459.  THIRD NATIONAL BANK OF FITZGERALD *v.*
BAKER *et al.*

1. On the trial of an action on a promissory note, where the defendants pleaded that the note was based upon an illegal consideration and was void, because given for the purpose of suppressing a criminal prosecution against one of them, testimony as to statements made by him to the other defendants (his mother and his brother-in-law), that he had violated the law and that he was going to be prosecuted for the crime unless they executed a note with him, was admissible for the purpose of explaining their conduct in signing the note, but not as proof that a criminal prosecution was threatened.

2. Whether the consideration of the note was the suppression of a threatened prosecution was purely a question of fact for the jury, under appropriate instructions from the court.

3. Proof that the maker of a note was a cashier in a national bank and violated section 5209 of the Revised Statutes of the United States, that prosecution for such violation was threatened, and that he, his mother, and his brother-in-law signed the note for the purpose of suppressing and settling the threatened criminal prosecution, voids the contract.

4. The court charged the jury: "In passing on this case, the court instructs you that the suppression of a criminal offense does not mean an imaginary violation of the law, but it does mean such facts as constitute at least a prima facie violation of the law or a technical violation of the law. It is contended that C. E. Baker did violate section 5209 of the Revised Statutes, and it becomes part of your duty, in the trial of this case, to look into that question. If Mr. Baker did not violate any criminal law, did not amount to prima facie violation of a criminal law, then there could be no criminal prosecution. There would have to be a violation of some law before there would be a suppression of a criminal prosecution; and, if no violation of a criminal law, there could not be a suppression of a criminal prosecution as to those particular facts and items. It is contended that there was a violation of the criminal act as provided under section 5209 of the Federal statutes." *Held,* that, considering the whole charge of the court, this particular excerpt from the charge was not subject to the criticism that it was misleading or that it in effect instructed the jury that they should find for the defendants.

DECIDED FEBRUARY 1, 1917.

Complaint; from city court of Valdosta—Judge Cranford. April 21, 1916.

*H. N. Randolph, Denmark & Griffin, Wall & Grantham,* for plaintiff.  *E. K. Wilcox, Haygood & Cutts,* for defendants.

LUKE, J.  The Third National Bank of Fitzgerald instituted suit upon a promissory note, against C. E. Baker, as principal, and Mrs. D. V. Baker and T. H. McKey as sureties. The defendants admitted the execution of the note, but denied indebtedness, and

pleaded, in substance, that the note was void; that the plaintiff was a national banking association under the laws of the United States; that while C. E. Baker was cashier of said bank, and for some time prior to the termination of his connection with the bank, one J. A. Zorn was a customer of said bank and had borrowed from it considerable sums of money for use in his business of manufacturing cross-ties; that said Zorn had negotiated for certain leases of cross-tie timber to be made, and the same were in some instances taken in the name of C. E. Baker, and said Baker had in instances individually guaranteed accounts made by said Zorn and which were paid by said Zorn through said bank; that said Baker, as cashier of said bank, had taken in behalf of said bank certain commercial paper of one E. C. Zorn, a brother of J. A. Zorn, and indorsed by said J. A. Zorn, and the aggregate amount of the indebtedness on which the said J. A. Zorn's name appeared as maker and as indorser was in excess of the ten per cent. limit allowed by the national banking act to be made to any one borrower, and the loan thus made was really for the benefit of said J. A. Zorn; that prior to the making of the note of E. C. Zorn the same indebtedness had been carried in the name of "Abba Cross-Tie Company," the said Abba Cross-Tie Company being the said J. A. Zorn, and, upon objection having been made to the transaction, the Abba Cross-Tie paper was cancelled and new paper made in the name of E. C. Zorn; that said Baker and said J. A. Zorn had made an agreement whereby said Baker was to have a share of the profits of the cross-tie business in consideration of the financing of said business through said bank; that upon severing his connection with said bank the officials of said bank demanded of said Baker that he indorse the notes held by said bank at the time against J. A. Zorn and against E. C. Zorn, making the assertion that the indebtedness was the indebtedness of said Baker, and, under pressure thus brought, Baker did indorse the said papers; that, the said J. A. Zorn paper not being paid, the officials of the bank made demands upon Baker for the payment of the same, and, it still being unpaid, they coupled their demands with intimations that Baker would be in serious trouble with the government unless it was settled, and, to add greater force to their threats, procured a national-bank examiner to take the matter up with Baker; that said bank examiner, acting under procurement

of said bank officials, informed said Baker that he had come to get said matter settled, and that unless it was settled it would be necessary for him to report the matter to the department, and that this would result in serious trouble for Baker; that numerous threats were continually being made, and the seriousness of the same caused Baker to mention the matter to his mother, the defendant Mrs. D. V. Baker, and to his brother-in-law, defendant T. H. McKey, and thereupon negotiations resulted between, A. B. Cook, acting for the plaintiff, and the said McKey, in which threats were made known to said McKey and renewed to him and through him and said C. E. Baker to his mother, Mrs. D. V. Baker; that the defendants were thus informed that unless the alleged indebtedness of said Baker (the Zorn indebtedness) was satisfactorily settled by good paper or money, the entire matter, which had already been brought to the attention of the national banking department or comptroller of the currency, would be referred to the department of justice, and that the bank would prosecute the said Baker for violating the national banking law while he was cashier of said bank; that the prosecution referred to was an alleged violation of section 5209 of the Revised Statutes of the United States, in making a misapplication of the funds of said bank by obtaining the same under papers made in the name of J. A. Zorn, and in making false entries as to the same, in that the details of said loan were not made known and entered on the books of the bank, and in lending an amount in excess of ten per cent. of the capital stock of said bank to one person, and being interested in such loans, and in not including the same in reports made to the comptroller of the currency; that, acting under the influence of these threats of criminal prosecution, and after being assured that if the note sued on was given, the entire matter of threats and criminal prosecution would be dropped, and solely for the purpose of avoiding the prosecution of said Baker in the United States Court on the charge aforesaid, the defendants executed the note sued upon; that said note was given for the purpose and consideration of suppressing a criminal prosecution, and was thus based upon an illegal consideration and void. The defendant C. E. Baker pleaded also that he had been legally adjudicated a bankrupt, and was legally granted a discharge in bankruptcy in accordance with the bankruptcy laws of the United States; and

that the demand or cause of action sued upon is one from which he was thus discharged. The trial of the cause resulted in a verdict in favor of defendants. The plaintiff duly filed its motion for new trial, and, upon the overruling of the motion, brought the case to this court, assigning error upon the refusal to grant a new trial.

1. Grounds 1 to 27, inclusive, of the amendment to the motion for a new trial assign error upon the rulings of the trial court in admitting certain evidence of Mrs. Baker, one of the sureties on the note sued on, over the objection that her statements were hearsay and self-serving declarations, not in the presence of the payee, and communications between two defendants, and not authorized by the payee of the note; the court permitting her to testify to communications and statements made to her by her son, C. E. Baker, and her son-in-law, T. H. McKey, to the effect that the bank officials were going to prosecute C. E. Baker for a crime committed while he was cashier of the plaintiff bank, and that the said criminal prosecution and crime could and would be settled if she and T. H. McKey would sign as sureties the note sued on. Ground 28 of the motion for a new trial assigns error because the court refused to rule out all the evidence introduced by the defendants of any threats against C. E. Baker which were communicated to McKey or Mrs. Baker by him, or by any other persons except representatives of the bank; the specific objections being, that communications by C. E. Baker to Mrs. Baker and McKey were hearsay, and that communications between the defendants themselves, which were unauthorized by the bank and unknown to the bank, were self-serving, in so far as they attempted to show any threats against Baker, or any agreement not to prosecute him if the note sued on was executed.

It is a general rule of evidence that hearsay has no probative value and is inadmissible, but this rule is subject to exceptions. Hearsay is admitted under our statute, in specified cases, from necessity. Civil Code (1910), § 5762. By section 5763 of the Civil Code it is provided, that "when, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they are admitted in evidence, not as hearsay, but as original evidence." There is a marked difference between the admissibility of evidence

and its legal effect when admitted.   Mrs. Baker is a party to the case, and her testimony can not be treated as self-serving declarations, in so far as it related to statements explaining her conduct and motives for signing the contract.   Such evidence by her, in our opinion, is to be treated as original evidence . If the note sued on was in fact given to settle or suppress a criminal prosecution, it would be void even in the hands of an innocent purchaser without notice.   *Jones* v. *Dannenberg,* 112 *Ga.* 426 (37 S. E. 729, 52 L. R. A. 271) ; *Small* v. *Williams,* 87 *Ga.* 681, 682 (13 S. E. 589). If, therefore, Mrs. Baker was induced to sign the note under the circumstances set up in her answer, and if by reason thereof the note was void, it would in our judgment be permissible, under the law, for her to testify to the conversation had by her with her co-obligor, for the purpose alone of ascertaining her motives and explaining her conduct in the premises.   We think that such conversations and statements, inducing or leading up to the giving of the note by her, would constitute a part of the res gestæ of the transaction.   We do not wish to be understood as holding that statements made to her by her co-obligor, inducing her to sign the note, which were unauthorized or not known of by the payee, would in themselves be sufficient to prove the truth of such statements, for the purpose of binding the payee in the note in any manner whatsoever, but we simply hold that her evidence was admissible solely to explain the facts and circumstances surrounding the signing of the note by her.   In the case of *Small* v. *Williams,* supra, it was held: "Pertinent declarations made by a person whilst on his way to procure the execution of a mortgage to secure an antecedent debt or liability, the expedition having resulted in its procurement, are admissible in evidence against the mortgagee on the question whether the mortgage was procured by fraud or duress.   They are a part of the res gestæ of the transaction, and consequently are admissible in evidence irrespective of the relation of agency between the mortgagee and the person who procured for him the execution of the mortgage."   In the case of Snyder *v.* Willey, 35 Michigan, 483, the court held: "Where the defense is made to a suit on a promissory note that it was given in compromise of a criminal complaint against the maker's son-in-law, and was procured through the entreaties of the daughter, whose fears had been played upon by the plaintiff for that purpose,

it is competent to show what she said to her father to induce him to give the note, this being part of the transaction." "Thus where the question is, whether the party acted prudently, wisely, or in good faith, the information on which he acted, whether true or false, is original and material evidence," says Greenleaf on Evidence, § 101. Hearsay is admissible as evidence to explain conduct. *Stamps* v. *Newton County,* 8 *Ga. App.* 229 (9), 235 (68 S. E. 947).

2. Grounds 29 to 32, inclusive, assign error upon the charge of the court. The remaining assignments of error are upon the ground that the judge failed to charge certain principles of law which the movant contends were applicable and should have been charged without request. We do not think that the charge of the court was misleading, and we do think that the charge of the court, when considered in its entirety, was full and fair upon the issues in the case.

3. The remaining question for this court to determine is whether the evidence was sufficient to sustain the plea of the defendants. The evidence clearly shows that C. E. Baker was guilty of concealing the transactions he had with Zorn, covering them up by entries upon the books; that the reports to the banking department did not show really what the transactions were; that in fact Baker was drawing a salary or profit from the business owned by Zorn in the cross-tie business; and that the bank did not know that Baker was financing the cross-tie business with the funds of the bank, because he himself was being paid something for his services. "The fact that entries in a report made by a national bank to the comptroller accurately state the facts as shown by the books does not prevent them from being false, where the books themselves do not correctly show the actual transactions or condition of the bank." Morse *v.* U. S., 174 Fed. 539 (98 C. C. A. 321). The testimony shows that Baker was charged by the officials of the bank with a violation of the banking laws, and was advised by the officers and by the bank examiner of the seriousness of the charges and the seriousness of the results, and that settlement must be made; in fact the evidence showed that the statement was made to Baker by an officer of the bank (Cook) that the president (Davis) had said that, "unless he (Baker) arranged that matter, the bank would spend $1,000 or put him in jail." Cook testified

that he told Baker that the president of the bank had said: "I don't mind losing $1,000, if he has violated the law [referring to Baker], I would like to spend $1,000 putting him in jail." The facts show that the bank was trying to force Baker to take care of the Zorn debt and other indebtedness to the bank. Cook, an official of the bank, wrote to McKey, one of the sureties, on December 7, 1911, as follows: "My dear Mr. McKey: Some time last spring I wrote you a personal letter relative to Mr. Baker's affairs. At that time no definite arrangements had been made by him, and, not anticipating any trouble, I assumed you did not wish to act upon suggestions made. I trust you will regard this as a confidential communication, inasmuch as Mr. Baker was employed by this bank on my representation, based somewhat on your letter to me at the time, which no doubt justified my relations with him. But his indifference to claims held by this bank against him, as principal and indorser, makes it a very difficult matter for me to keep the board from reporting him to the government, in which event I can be of no service to him, as the matter will be entirely out of my hands, and I have held the matter over pending some adjustment of his affairs. He certainly does not realize the importance of preventing the institution of proceedings of this kind, or he would have made some disposition of the matter before now. However, I do not care to assume that his people were ignorant of the facts in the case, without giving them an opportunity of preventing, before it was too late, what might prove a rather serious matter." Cook, on April 24, 1911, wrote to C. E. Baker and inclosed the following letter from the bank examiner: "Please inform me as to whether or not Mr. C. E. Baker has made any further payment on his indebtedness to your bank. I would regret very much to be obliged to make a complaint concerning the lending to himself of so much of the funds of the bank without the knowledge or consent of the board. If I am obliged to do this it will of course give him a great deal of serious trouble. Please let me hear from you at your earliest convenience, and greatly oblige. Yours truly, J. K. McDonald, Examiner." After further interviews Haygood and Cutts, representing C. E. Baker, on December 16, 1911, addressed to the Third National Bank and Elkins and Wall, attorneys for the bank, the following letter: "Referring to your last suggestion and inquiry by your Mr. Wall to the members

of our firm as to the adjustment of the differences between the Third National Bank and Mr. C. E. Baker, we beg leave to say that the note which was offered to the bank and which was in the custody of the directors, subject to their acceptance of it, and which the bank declined to accept and returned to Mr. Baker, was by him returned to the security, in order that it might be cancelled. Mr. Baker did not deem it proper to keep the note, and, for the satisfaction of the security, thought it best to return it. Such a note can be obtained, however, by Mr. Baker within forty-eight hours, but he dislikes to again ask for security to sign the note with him, unless there is some assurance that it would be accepted. Both Mr. Baker and the security not only desire to know that it would be accepted, but also that its acceptance would mean an entire settlement of all issues pending between the bank and Mr. Baker, and thus result in the satisfaction of the executions obtained against him, and the dismissal of the pending cases growing out of the same; and also that there will be no further effort made to embarrass Mr. Baker by the presentation of any kind of charges against him, which has been heretofore referred to in the correspondence between the parties as involving the submission of the matters to the department of justice. While Mr. Baker indignantly disclaims any suggestion of a violation of the national banking laws, and would have nothing whatever to fear if such threats were carried out, yet naturally he and the security would want to know that these suggestions, as well as all issues and differences, would be finally ended and settled. We would be glad to have your prompt reply to this letter, as Mr. Baker expects still to be able to obtain the security required, and, upon receiving your favorable answer to-day, will be able to obtain the note by Monday." On December 19, 1911, the note sued on was delivered to the bank.

The evidence authorized the verdict, and the court did not err in overruling the motion for new trial.

*Judgment affirmed. Wade, C. J., and George, J., concur.*