30428.  SHEEHAN *v.* CITY COUNCIL OF AUGUSTA.

Decided May 6, 1944.  Rehearing denied June 7, 1944.

234

*Henry T. Chance, Roy V. Harris,* for plaintiff.

*C. Wesley Killebrew,* for defendant.

SUTTON, P. J.   J. L. Sheehan sued the City Council of Augusta for $1656, which he alleged the defendant had in its possession, and which in equity and good conscience belonged to him. He alleged that the defendant operated a Food Stamp Plan, and placed A. B. O'Connor in charge as manager and issuing officer; that on October 3, 1942, O'Connor issued to the plaintiff a check against the Food Stamp Plan for $1656, which the plaintiff cashed and turned the money over to O'Connor; that O'Connor deposited this money in the bank to the credit of the Food Stamp Plan, and thereafter the defendant removed O'Connor as manager and issuing officer, and took charge of all the funds on deposit in the bank; that when the plaintiff presented the check to the bank for payment, the bank refused payment on the ground that O'Connor had no authority to issue the check; that the defendant kept possession of the money derived from said check, and refused to pay the same to the plaintiff. The defendant answered, and admitted that it operated the Food Stamp Plan and that O'Connor was its issuing officer and manager, but denied that he had authority to issue checks, except to the United States Government for the purchase of additional food stamps to replace those sold. By amendment, the defendant set out that the entire transaction between the plaintiff and O'Connor was illegal and immoral, in that it was a scheme, device, and conspiracy between them to cover up and hide from the defendant shortages and defalcations of O'Connor as manager of said Food Stamp Plan; that the transaction was a mere loan by the plaintiff to O'Connor for which the defendant was not liable; and that O'Connor was without authority to issue the check, which was of public record and due notice to the plaintiff. The plaintiff demurred to the amendment as setting out no matter of defense, and as irrelevant and immaterial. The judge overruled the demurrer, and the plaintiff excepted pendente lite, and assigned error thereon in the bill of exceptions to this court.

It appeared from the evidence that in November, 1940, the defendant, in connection with the Federal Surplus Marketing Corporation, set up a Food Stamp Plan, and placed A. B. O'Connor

in charge of it; that the defendant purchased $14,700 of food stamps from the Federal government which it turned over to O'Connor to sell, with instructions to purchase additional stamps to replace those sold; that O'Connor was neither authorized nor forbidden to keep the proceeds of these sales in a bank account, as the details of the business were left largely to him; that the city authorities audited the books of the Food Stamp Plan, including the bank account, from time to time; and that on one occasion, O'Connor issued and delivered to the defendant a check for $4700 on the bank account, which was cashed by the defendant.

On the morning of October 3, 1942, the city auditor, while making an investigation of the records of the Food Stamp Plan, found a shortage of $1656; the auditor left the office of the Food Stamp Plan for a short time and while he was gone O'Connor issued a check against the Food Stamp Plan for the amount of the shortage, and went to the plaintiff's place of business where the plaintiff let him have this amount of money. The plaintiff testified that he merely cashed the check when told by O'Connor that he needed the money to meet a payroll, and this was also testified to by O'Connor. A few minutes after he had turned the money over to O'Connor, he saw O'Connor in the bank making a deposit. He then went and obtained his check and returned to the bank, but the bank was closed when he arrived there with the check. O'Connor testified that he deposited all the money obtained from the plaintiff in the bank to the account of the Food Stamp Plan, and the bank's records showed a deposit in this exact amount on that day. When the auditor returned that afternoon, he finished his examination of the Food Stamp Plan records, and found that the $1656 shortage had been covered; but he made a report to the acting mayor of the City of Augusta who removed O'Connor from his employment on October 5, 1942. On October 6, when the plaintiff presented his check to the bank, the bank refused payment on the ground that O'Connor did not have authority to issue checks against the Food Stamp Plan account; but stated that, if the check had been presented for payment the day it was issued, it would have been paid.

While both the plaintiff and O'Connor testified that the only reason given by O'Connor to the plaintiff at the time the money was turned over to him was that he needed the money to meet a payroll, the city auditor testified that he went to the office of the

plaintiff's attorney some days after the payment of the check had been refused, and while there he discussed the matter with the plaintiff and his attorney; that he asked the plaintiff why he cashed the check for O'Connor, and the plaintiff told him that O'Connor said: "He needed the cash money, and was looking for two or three Federal men the next morning, and he said that he would give it back to me in two of three days." This was denied by both the plaintiff and his attorney.

The judge charged the jury: "If you believe that the plaintiff, Mr. Sheehan, cashed that check for Mr. O'Connor in good faith, as the issuing officer of the Food Stamp Plan for the City of Augusta, and that Mr. Sheehan really believed that the money was to go for the payroll, then your verdict should be for the plaintiff in that amount. If, on the other hand, gentlemen of the jury, you believe, by a preponderance of the evidence, that Mr. O'Connor was short with the City of Augusta, and you further believe that Mr. O'Connor made that known to Mr. Sheehan, and that they acted in concert to cover that shortage in this way, as contended by the defendant, then in that event, if you believe that has been established by a preponderance of the evidence, your verdict would be for the defendant, the City Council of Augusta; or, if you believe from the evidence, and by a preponderance of the evidence, that when this check was cashed by Mr. Sheehan that there was a representation made to Mr. Sheehan [by Mr. O'Connor] that he was short, and that this was a personal loan to Mr. O'Connor by Mr. Sheehan, and was a check given in this way to protect Mr. O'Connor for a few days, if that was the scheme, and you believe that by a preponderance of the evidence, then your verdict should be for the defendant, the City Council of Augusta. . . I charge you, gentlemen of the jury, that if you find in this case that Mr. O'Connor was the agent of the City Council of Augusta, and that as such agent he misused his authority, or acted in excess of his authority, and issued the check involved in this case, and received from the issuing of this check $1656, and deposited said $1656 to the credit of the City Council of Augusta, or its Food Stamp Plan, and that the city has used and retained said $1656, and that the city's conduct in doing so would amount to a ratification of the unauthorized act of Mr. O'Connor, then the defendant would be liable to the plaintiff for the amount due on the check involved in this case. If

you find this state of facts to be true, then it would be your duty to find for the plaintiff in the sum of $1656, together with interest at 7 per cent. from the date of the issuance of the check; provided, however, if you should believe, as I have charged you, that this was a plan and a scheme and an arrangement between Mr. O'Connor and Mr. Sheehan to help him cover up his alleged shortage, and that was the plan, then your verdict would be for the defendant."

The jury found in favor of the defendant. The plaintiff filed a motion for a new trial, which he amended, and the exception here is to the judgment overruling the plaintiff's demurrers to the defendant's amendment to its answer, and to the judgment overruling the motion for a new trial.

■ The plaintiff contends that the court erred in overruling his demurrers to the following amendment of the defendant: " (9) For further plea and answer, defendant says that the entire transaction for which plaintiff seeks to recover was a scheme, device, and a conspiracy entered into by and between plaintiff and the said O'Connor in an attempt to cover up and hide from this defendant shortages and defalcations of funds belonging to this defendant by O'Connor as manager of said Food Stamp Plan, and was, therefore, a united and equal effort of plaintiff and O'Connor to defraud this defendant, which is immoral and illegal, the plaintiff and the said O'Connor being in pari delicto, the result of which the plaintiff is not entitled to recover from the defendant. (10) In further plea and answer, defendant says that the entire transaction was a mere loan made by plaintiff to O'Connor to hide and cover up said shortages and defalcations in order to defraud the defendant, which is a matter entirely between plaintiff and O'Connor, for which the defendant is not liable. (11) For further plea and answer, defendant says that the said O'Connor was without authority, and had never been authorized by the defendant to issue the check upon which this suit is brought, nor any other check, which was of public record and due notice to the plaintiff." The plaintiff demurred to the amendment, and to each paragraph thereof, upon the ground that the same set out no matter of defense, and was irrelevant and immaterial. The court did not err in overruling the demurrer. The plaintiff's cause of action is one in assumpsit for money had and received, and, while an action at law because of its origin as a mode of action in the common-law courts, is founded upon the

equitable principle that no one ought to unjustly enrich himself at the expense of another, and is maintainable in all cases where the defendant has received money under such circumstances as in equity and good conscience he ought not to retain it, and which in equity and good conscience the plaintiff is entitled to recover. *Jasper School District* v. *Gormley,* 184 *Ga.* 756 (193 S. E. 248), and cit. See also, *Dobbs* v. *Pearlman,* 59 *Ga. App.* 770 (2 S. E. 2d, 109); *Scottish Union &c. Co.* v. *Peoples Clothing Co.,* 64 *Ga. App.* 147 (2) (12 S. E. 2d, 474). The first paragraph of the amendment alleged that the money for which the suit was brought was turned over to O'Connor by the plaintiff as part of a scheme, device, and conspiracy between the plaintiff and O'Connor to prevent the defendant from discovering the shortages and defalcations of O'Connor as manager of the Food Stamp Plan, and that the entire transaction was illegal and immoral. Construing the allegations of the answer as true, which is proper when construing them against a demurrer, the entire transaction between the plaintiff and O'Connor was illegal and immoral, and it is well-settled law that the courts will not lend their aid to the enforcement of contracts based upon illegal and immoral considerations. *Allen* v. *Owen,* 60 *Ga. App.* 210 (3 S. E. 2d, 467), and cit. See also, *Watkins* v. *Nugen,* 118 *Ga.* 372 (45 S. E. 262); *Bryson* v. *Keith,* 186 *Ga.* 616 (199 S. E. 110). In the second paragraph, the defendant alleged that the transaction between the plaintiff and O'Connor was, that the plaintiff loaned O'Connor the sum sued for, which O'Connor used to cover up his shortages and defalcations with the defendant. If O'Connor was short with the city's money, and the plaintiff loaned him sufficient money to cover this shortage, the fact that the money which O'Connor used to repay his indebtedness to the defendant was loaned him by the plaintiff would not create an inference that the defendant was indebted to the plaintiff for the amounts paid.

In his pleadings, the plaintiff contends that he cashed the check for $1656 for O'Connor in good faith, and whether or not the plaintiff had notice that O'Connor had no authority to issue the check, if such was a fact, was material and relevant on the question of the good faith of the plaintiff in the transaction. The court did not err in overruling the demurrer.

■ The court did not err in overruling the general grounds of the motion for a new trial. The plaintiff contended he cashed a check in good faith for an agent of the defendant in the sum of $1656, and that the agent deposited the money to the same account against which the check was drawn; that the defendant took charge of the account and retained the money therein, but stopped payment on the check, and that the plaintiff was in equity and good conscience entitled to recover the money from the defendant. The defendant contended that the plaintiff turned over this money to O'Connor as a part of an illegal and immoral scheme, device, and conspiracy to prevent it from discovering the defalcations of O'Connor of funds entrusted to him by the defendant; that it has not been unjustly enriched, as it was not in possession of any money that it was not entitled to retain; that the plaintiff was not in equity and good conscience entitled to recover the money. The evidence was conflicting on material issues. While the plaintiff and O'Connor testified that the plaintiff cashed the check when told by O'Connor that he needed the money to meet a payroll, there was evidence from the auditor of the defendant that when he talked with the plaintiff some days after the payment of the check was refused by the bank, he asked the plaintiff why he cashed the check, and the plaintiff told him that O'Connor said he needed the cash money as he was expecting two or three Federal men in the next morning, and that he would "give it back" to him in a few days. The city contended that this evidence was sufficient to show that the money was turned over to O'Connor by the plaintiff as a part of a scheme or device and conspiracy to prevent the defendant from discovering the defalcations of O'Connor, and that, since the money was actually used by O'Connor in an attempt to hide or cover up his shortages, the plaintiff was not in equity and good conscience entitled to recover it from the defendant. There was also evidence that within a few minutes after the plaintiff turned the money over to O'Connor he saw O'Connor in the bank making a deposit, and did not present his check to the bank for payment until the third day after it was issued. Whether the check was cashed in good faith by the plaintiff, or whether the money was turned over to O'Connor as a part of a scheme or device to prevent the defendant from discovering the shortages of O'Connor, was a question of fact for the jury under the pleadings and the evidence. *McConnell* v.

240

*Cherokee National Bank,* 18 *Ga. App.* 52 (88 S. E. 824). In this connection, see, *Third National Bank of Fitzgerald* v. *Baker,* 19 *Ga. App.* 208 (2) (91 S. E. 346) ; *Epps* v. *Anderson,* 28 *Ga. App.* 745 (2) (113 S. E. 27). The jury was authorized to find from the evidence that the money was turned over to O'Connor by the plaintiff and used by O'Connor with the knowledge and consent of the plaintiff in an effort to prevent the defendant from discovering the shortages and defalcations of O'Connor of its funds entrusted to him, and that the check was given as part of this scheme or device between the plaintiff and O'Connor. It was held in *Puckett* v. *Roquemore,* 55 *Ga.* 235, "If the money was paid on an illegal agreement that the prosecution would be settled or discontinued, or even that the prosecutor should use his influence to have it suppressed, the party is equally without remedy. In contemplation of the law such a contract is vicious and corrupt, and both parties are at fault, in pari delicto. The law leaves them where it finds them—in the bed which they have made for themselves they must lie." Also see the Code, § 20-501; *William Hester Marble Co.* v. *Walton,* 22 *Ga. App.* 433 (96 S. E. 269) ; *Bryson* v. *Keith,* supra; *Allen* v. *Owen,* supra; *Watkins* v. *Nugen,* supra. In the present case, the defendant was not a party to the scheme or arrangement between the plaintiff and O'Connor, if such existed, but the city set up the illegal and immoral consideration of the check, and the circumstances under which the money was turned over to O'Connor by the plaintiff, and turned over to it by O'Connor, as matters of defense to the plaintiff's action. Where either party has to rely upon a contract which is in fact illegal, the other party may in avoidance thereof show its illegality. *Clarke* v. *Brown,* 77 *Ga.* 606 (4 Am. St. R. 98). It was held in *Benson* v. *Georgian Co.,* 21 *Ga. App.* 448 (94 S. E. 644), "Where parties are engaged in illegal transactions, whether malum prohibitum or malum in se, the courts of this State will not interpose to grant any relief. In such cases the rule is, for the court to leave the parties where it finds them, no matter whether the illegality of the contract appears from the plaintiff's case, or is set up by way of defense." Also see, *Patterson* v. *Gibson,* 81 *Ga.* 802 (10 S. E. 9, 12 Am. St. R. 356) ; *William Hester Marble Co.* v. *Walton,* supra. The issues of fact were for the jury to determine under the pleadings and the evidence. The verdict was authorized by the evidence and has the approval of the

trial judge, and is therefore binding on this court. The judge did not err in overruling the general grounds of the motion for a new trial.

■ In special ground 1 of the motion for new trial, the plaintiff in error contends that the court erred in refusing to give the following timely written request in charge to the jury: "Gentlemen of the jury, I charge you that this is an action for money had and received, and such an action lies in all cases where another has received money which the plaintiff, in good conscience and equity, is entitled to recover, and which the defendant is not entitled in good conscience to retain. In such an action it is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect his liability if in equity and good conscience he is not entitled to hold it against the original owner. In this case the defendant has come into possession of $1656 which came from the plaintiff. If you find that in equity and good conscience the defendant is not entitled to keep the money, then you should find a verdict for the plaintiff." It is a well-established principle of law that it is not error for the court to refuse to give a request which is substantially covered by the charge given to the jury; and we think the above request was substantially covered by the charge given the jury in this case. The court in his charge instructed the jury: "In this case the plaintiff contends, substantially, that he cashed the check for $1656 for Mr. O'Connor, who was the manager of the Food Stamp Plan; the plaintiff contends that he cashed the check at the request of Mr. O'Connor on the theory that he wanted the money for a payroll, and that he, in good faith, cashed that check on that representation to him by Mr. O'Connor; that his money went into the bank and was credited to the account of the Food Stamp Plan, of which Mr. O'Connor was what was known as the issuing officer, and that, therefore, the city has his money now, and that the defendant, City Council of Augusta, stopped the payment on that check, and he has come in here by this petition and asks that he be refunded that money, together with interest on it from the time of the issuance of this check. When, and if, the plaintiff has shown you those facts, if he has, by evidence, that makes out what the law knows as a prima facie case for him. If those were the facts, substantially, as he contends in the petition, and you are to determine that

by the evidence in the case, and you believe that by a preponderance of the evidence, then your verdict would be for the plaintiff." Then the court after stating the contentions of the defendant, said: "Now, gentlemen of the jury, substantially those are the contentions of the parties. I don't mean to give you all of them or in the order of their importance or sequence. You are to determine those matters for yourselves. You will have the pleadings out with you. . . If you believe that the plaintiff, Mr. Sheehan, cashed that check for Mr. O'Connor in good faith, as the issuing officer of the Food Stamp Plan for the City of Augusta, and that Mr. Sheehan really believed that the money was to go for the payroll, then your verdict should be for the plaintiff in that amount." Then, after giving the defendant's theory, he added: "In determining where the preponderance of evidence lies, the jury may consider all the facts and circumstances of the case, . . so that, gentlemen of the jury, if, after you have considered all the facts and circumstances in the case, and the testimony, and the evidence that has been adduced to you on the stand, together with the law as given you in charge by the court, you then determine where the truth lies so far as you can see it, and find a verdict accordingly." The general charge given presented to the jury every applicable theory of the plaintiff and the defendant. It was full and fair, and stated the issues and the law applicable thereto in language which the jury could easily understand. It was held in *Georgia Railroad* v. *Thomas*, 73 *Ga.* 350 (2) "Where the court has fully and fairly submitted in his charge to the jury the law applicable to the whole case, he is not bound to give any further charge, however proper or legal." Also see, *Georgia Refining Co.* v. *Augusta Oil Co.*, 74 *Ga.* 497 (9); *Conant* v. *Jones*, 120 *Ga.* 568 (10) (48 S. E. 234); *Savannah Electric Co.* v. *Bell*, 124 *Ga.* 663 (3) (53 S. E. 109); *Southern Express Co.* v. *Cummings*, 25 *Ga. App.* 52 (3) (102 S. E. 456); *Black & White Cab Co.* v. *Clark*, 67 *Ga. App.* 170 (2) (19 S. E. 2d, 570). We think the principles contained in the request, in so far as pertinent and legal, were covered by the general charge, which was fair and comprehensive, and that no harmful error is shown in special ground 1 of the motion.

■ Special grounds 2, 4, 5, and 6, which assign error on the failure of the court to give certain requests in charge to the jury, show no error. In so far as these requests contained pertinent and

applicable principles of law, they were covered by the charge given to the jury by the court.

■ In special ground 3, the plaintiff contends that the court erred in refusing to give the following timely written request: "A principal is bound by the acts of his agent within the scope of his authority. The form in which the agent acts is quite immaterial; if the principal's name is disclosed, and the agent professes to act for him, it will be held to be the act of the principal; the agent's authority will be construed to include all necessary and usual means for effectually executing it; and private instructions not known to persons dealing with a general agent cannot affect them." The court instructed the jury: "I charge you, gentlemen of the jury, that if you find in this case that Mr. O'Connor was agent of the City Council of Augusta, and that as such agent he misused his authority, or acted in excess of his authority and issued the check involved in this case, and received from the issuing of this check $1656, and deposited said $1656 to the credit of the City Council of Augusta, or its Food Stamp Plan, and that the City's conduct in doing so would amount to a ratification of the unauthorized act of Mr. O'Connor, then the defendant would be liable to the plaintiff for the amount due on the check involved in this case. If you find this state of facts to be true, then it would be your duty to find for the plaintiff." We think the principles contained in the request were substantially covered by the charge given to the jury. See, *Black & White Cab Co. v. Clark*, supra; *Southern Express Co. v. Cummings*, supra. The court did not err in overruling special ground 3 of the motion for new trial.

■ Special grounds 7, 8, and 9, which assign error on certain excerpts from the charge, are without merit. These excerpts, when taken in connection with the charge as a whole, show no harmful error, and the judge did not err in overruling these grounds of the motion for new trial.

■ The verdict is supported by evidence, no error of law appears, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Parker, J., concurs.*

FELTON, J., dissenting. The judge charged the jury in part as follows: "If you believe that the plaintiff, Mr. Sheehan, cashed that check for Mr. O'Connor in good faith, as the issuing officer of the Food Stamp Plan for the City of Augusta, and that Mr. Shee-

han really believed that the money was to go for the payroll, then your verdict should be for the plaintiff in that amount. *If, on the other hand, . . you believe, by a preponderance of the evidence, that Mr. O'Connor was short with the City of Augusta, and you further believe that Mr. O'Connor made that known to Mr. Sheehan, and that they acted in concert to cover that shortage in this way, as contended by the defendant, then in that event, . . your verdict would be for the defendant . .* or, if you believe · . . that when this check was cashed by Mr. Sheehan that there was a representation made to Mr. Sheehan that he was short, and that this was a personal loan to Mr. O'Connor by Mr. Sheehan, and was a check given in this way to protect Mr. O'Connor for a few days, if that was the scheme, and you believe that by a preponderance of the evidence, then your verdict should be for the defendant." The italicized portion of the foregoing part of the charge is assigned as error in the 8th ground of the motion for new trial. I think the charge excepted to was error because it was confusing to the jury and might have been understood to mean that they were authorized to find from the evidence that if Sheehan cashed the draft and did not make a loan the transaction was done with a view to covering up a shortage. The only evidence that there was a guilty knowledge on the part of Sheehan was the testimony of the auditor, and that was in the alleged statement made by O'Connor to Sheehan that O'Connor needed the cash money, as he was expecting two or three Federal men the next morning, and that he would give the money back in a few days. If this statement was believed by the jury the finding for the city would have been authorized, because Sheehan knew or should have known that O'Connor had no right to offer his employer's check as collateral for a personal loan. What O'Connor proposed to do with the money was utterly immaterial. If the check, accepted and used as collateral, had been cashed, both parties would have been guilty of a wrong. If O'Connor had given the money to the Red Cross it wouldn't have helped the parties any. As I understand it, there were but two questions for decision: (1) whether the check was cashed by Sheehan in good faith; or (2) whether it was put up as collateral for a personal loan. As I understand the charge excepted to, it injected a third question into the case not warranted by the evidence, to wit, whether, if the check was cashed, the transaction was a part of an illegal scheme.

I think the court erred also in refusing the following written request to charge: "I charge you gentlemen of the jury that under the pleadings and the evidence of this case that there is only one theory under which you could find for the defendant, and that is if you find that the $1656 paid by J. L. Sheehan to A. B. O'Connor was a loan to Mr. O'Connor personally, and to be repaid by him. If you find that Mr. Sheehan loaned the money to Mr. O'Connor personally you should find for the defendant. If the money was not paid to Mr. O'Connor as a personal loan you should find for the plaintiff." I dissent from the judgment of affirmance.