## 31910. PORTER v. HANCOCK.

DECIDED FEBRUARY 19, 1948.

*George W. Westmoreland*, for plaintiff in error.

*Wheeler, Robinson & Thurmond, H. W. Davis*, contra.

SUTTON, C. J. This was a suit by Mrs. Mary O. Hancock against C. F. Porter, for money had and received. The plaintiff alleged in her petition: that Claud Hancock, her husband, on October 29, 1942, sold a pair of mules to Will Cofield for $425, with the understanding that Cofield would immediately sell cotton and pay for the mules; that on or about November 1, 1942, Cofield paid $425 to the defendant for Claud Hancock, which the defendant failed to turn over to said Hancock, but held the same in trust for him; that Claud Hancock died intestate, on November 2, 1942; and that said account for $425 had been set apart as a year's support to the plaintiff, but had not been paid to her by the defendant.

The defendant filed an answer, denying any indebtedness on his part to the plaintiff, or that Will Cofield ever turned over any money to him to give to the plaintiff or her husband, Claud Hancock. The defendant alleged that he had purchased a pair of mules from Claud Hancock for $425, and directed said Hancock to deliver them to Will Cofield, a cropper of the defendant.

The jury returned a verdict for the plaintiff. The defendant made a motion for a new trial, which was overruled, and he excepted.

The plaintiff in error contends that the verdict for the plaintiff was not authorized by the evidence. He contends that he purchased the mules in question from Claud Hancock for $425 and then sold them to Will Cofield. Let us look to the evidence to see who purchased the mules from Claud Hancock. Will Cofield testified: "My name is Will Cofield and I live with Carl Porter, the defendant in this case. I have lived with him 8 years. On the 30th day of October, 1942, I got a pair of mules from Claud Hancock, but I was to pay Mr. Porter and he was to pay Mr. Hancock. I was to pay him $425, when Mr. Porter and I settled and Mr. Porter took out for the mules. I did not [pay]

him the next week, I don't know when I paid him, it was when he sold the cotton." Will Cofield testified: That Mr. Hancock was not selling him the mules on a credit, but that he was to sell his cotton and turn the money over to Mr. Porter, and he did that. "I did not sell my cotton the next week after I got the mules. I don't remember the day it was sold, but it was a good while. When I did sell, Mr. Porter and me settled up, and I told him to take out for the mules, we settled the whole thing. Mr. Porter got the $425. I never paid Mr. Hancock. I know I never paid Mr. Hancock, and I got the two mules. . . I went over to Hancock's barn with another fellow and Mr. Claud Hancock came up about the time we were fixing to leave, and me and him went in there and he showed me the mules and I told him, 'I'm not ready to buy the mules,' and he told me, he says, 'Whatever me and you do is satisfactory to Mr. Carl;' and so I started off over this way, and he said, 'I'm going over that way, get in the car,' and I got in the car with him and we started over here, and he put me out down here and he went on round the square, and he came back in a few minutes and called me, and Mr. Porter was in the car and he said, 'Come on, let's go over there and let me sell you those mules.' Mr. Hancock said this, and we went on over there, and he told me, he said, 'These mules will just suit you,' and I said I wasn't ready to buy no mules now, and me and Mr. Porter stepped off and talked a little bit, and we came back to town and I got out of the car down there in front of the bank, and Mr. Porter said, 'The mules are all right and the price is right, if you want them take them,' and so I went back around where Mr. Hancock was sitting in front of the bank and I told him ,'I believe I'll take them mules, and Mr. Porter is to pay you.' Mr. Porter told me what Mr. Hancock had said to him. Mr. Porter had priced the mules; I asked Mr. Hancock and he never did make me a price. I didn't figure Mr. Hancock would sell me a pair of mules any way. I was working on the halves with Mr. Porter, I don't know who delivered the mules. I stayed down here in town until about night, and when I got home the mules were in the barn. That was in October. I don't know when I settled up with Mr. Porter. We settled up somewhere about Christmas. The mules were brought to my house and not to Mr. Porter's."

There was evidence that the account had been set apart as a year's support to the plaintiff, and that demand for payment of the same had been made upon the defendant. The defendant testified: "My name is C. F. Porter, and on the 29th day of October I bought a pair of mules from Claud Hancock. Mr. Cofield was with me. He worked on halves with me. I never at any time in 1942 received from Mr. Cofield any money to turn over to Mr. Hancock. I never received any money from Mr. Cofield for Mr. Hancock. All accounts and all monies I have received from him has been for indebtedness he was due me. Will Cofield bought a pair of mules from me, I don't remember the date. The mules were delivered to Mr. Cofield. I don't know who delivered them; he lived about 6 miles from me. He was to pay me $425 for these mules. I don't know when he paid me. I sell my cotton in bulk. It might have been in the spring or around Christmas, it was when cotton was sold. I got the mules I sold Mr. Cofield from Mr. Claud Hancock." There was other evidence for both the plaintiff and the defendant, but it is not deemed necessary to set it out.

" 'An action for money had and received lies in all cases where another has received money which the plaintiff, ex æquo et bono, is entitled to recover and which the defendant is not entitled in good conscience to retain.' *Zapf Realty Co.* v. *Brown,* 26 *Ga. App.* 443 (106 S. E. 748); *Whitehead* v. *Peck,* 1 *Ga.* 140 (3); *Knight* v. *Roberts,* 17 *Ga. App.* 527 (87 S. E. 809). In such an action 'the law implies a promise on the part of any person who has received the money of another to pay that person on demand. The reception of money by one and the demand by the other makes all the privity that is necessary to maintain this action.' *Central R.* v. *First Nat. Bank,* 73 *Ga.* 383 (2a), 385; *Bates-Farley Savings Bank* v. *Dismukes,* 107 *Ga.* 212 (2) 218 (33 S. E. 175). 'It is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not effect his liability, if, in equity and good conscience, he is not entitled to hold it against the true owner.' *Citizens Bank* v. *Rudisill,* 4 *Ga. App.* 37 (2), 41 (60 S. E. 818); 27 Cyc. 864, 857; 2 Rul. Case Law, 778." *Haupt* v. *Horovitz,* 31 *Ga. App.* 203 (1) (120 S. E. 425). See also *Sheehan* v. *Augusta,* 71 *Ga. App.* 233, 337 (1) (30 S. E. 2d, 502); *Dobbs* v. *Pearlman,* 59 *Ga. App.*

770(2) (2 S. E. 2d, 109) ; *Jasper School District* v. *Gormley*, 184 *Ga.* 756, 758 (193 S. E. 248).

Will Cofield had lived with the defendant Porter for 8 years and was his cropper. He testified: "I got a pair of mules from Claud Hancock, but I was to pay Mr. Porter and he was to pay Mr. Hancock. I was to pay $425, when Mr. Porter and I settled, and Mr. Porter took out for the mules. . . When I did sell [my cotton] Mr. Porter and me settled up, and I told him to take out for the mules, we settled the whole thing. Mr. Porter got the $425. I never paid Mr. Hancock. I know I never paid Mr. Hancock, and I got the mules." His testimony, as set out above, shows how the negotiations and trade for the mules were made. The evidence was conflicting, but the jury was authorized to find from the evidence, and the inferences to be drawn therefrom, that Will Cofield purchased the pair of mules from Claud Hancock and the purchase-price was to be paid when Cofield sold his cotton, which was to be immediately, and that his cotton was sold and the purchase-price of the mules, $425, was turned over by Cofield to the defendant, who was to pay Hancock for the mules.

■ The motion for new trial contains one special ground, in which it is contended that "the court erred in not charging the jury the definition of a sale, the charge being: 'You are to determine whether or not the sale of these mules in question was made by the deceased, Claud Hancock, to Will Cofield or not as contended by the plaintiff. Now that is denied by the defendant, he contends that the sale was made directly to him, C. F. Porter, and not to his cropper, Will Cofield. If you find that this sale was made to C. F. Porter by the deceased, Claud Hancock, of the mules in question and not to Will Cofield, that would end your investigation and you would find for the defendant'." It is contended that such a charge, without any explanation of what constituted a sale, was insufficient and was erroneous and injurious to the movant, under the evidence. The movant does not set out in this ground the definition of a sale which should have been given in charge to the jury. The charge given was fair to both parties, and it does not appear that it was erroneous or harmful to the defendant. The movant contends in his brief in this court that the essentials of a contract of sale as contained in

Code § 96-101 should have been given in charge to the jury. This section provides: "Three elements are essential to a contract of sale: 1. An identification of the thing sold. 2. An agreement as to the price to be paid. 3. Consent of the parties." Sale is a word of common use, and we think that jurors of average intelligence understand its meaning and significance when applied to a mule trade. Unquestionably, the jury in this case knew that the subject-matter of the sale was a pair of mules; that the purchase-price was $425; and whether or not the parties consented thereto. This was all to be determined by the jury from the evidence. No harmful error is shown by this ground of the motion.

The court did not err in overruling the defendant's motion for a new trial.

*Judgment affirmed. Felton and Parker, JJ., concur.*