33262. SMITH *v.* PATTERSON.

DECIDED OCTOBER 28, 1950.

*Robert R. Forrester,* for plaintiff in error.

*R. D. Smith, Ford & Houston,* contra.

SUTTON, C. J. This action was brought by A. V. Patterson against W. C. Smith, in Worth Superior Court, to recover $250, it being alleged that the plaintiff gave the defendant a check on the Sylvester Banking Company payable to the order of the defendant for $250 with the understanding that the same would be used by the defendant in reaching an agreement with H. A. Hornbuckle in regard to a controversy, and would not be presented to the bank for payment, but would be returned to the plaintiff, and that the defendant violated this agreement, and illegally, wrongfully, and fraudulently presented the check to the bank for payment and received $250 therefor, injuring and damaging the plaintiff in such sum. The defendant denied liability and alleged that the check was given to him in accordance with an agreement whereby the plaintiff and Hornbuckle each agreed to pay him $250 for his service in connection with the sale to the plaintiff of a farm owned by Hornbuckle.

The plaintiff testified, in part, as follows: "I just loaned the Little Colonel [the defendant] the check so he could get Mr. Harry Hornbuckle to pay him and he was not to cash the check but was to give it back to me in a few days. . . The Little Colonel said to me, 'Looks like I am about to get in a snap with Harry Hornbuckle—he don't want to pay me nothing for my work—and I want you to help me out.' Well I asked him what could I do, and he said for me to give him a check to show to Harry Hornbuckle and make him think I had paid him $250 so he could get him to pay him and so I did. . . I don't owe him

that $250 check—he owes me that $250 for I just loaned him my check and he was not to use it—that's right—that's the way it was."

The defendant testified, in part, as follows: "I know Mr. A. V. Patterson well. Yes sir, he gave me that $250 check dated December 17th, 1946—he gave me that check on condition. I represented Mr. Patterson in the purchase of land from Mr. Harry Hornbuckle and that check there represents my charges. Yes, I had some of Mr. Hornbuckle's land listed with me for sale before it was sold at auction by the Johnson Land Company and I had talked with Mr. Patterson several times about purchasing the farm that joined his. . . Finally, when the Johnson Land Company was going to auction the Hornbuckle land, Bo [the plaintiff] called me and asked me to go down there with him. . . When we got down there before the sale we talked to Mr. Hornbuckle—that is, Bo and I, Bo made the statement to Mr. Hornbuckle there on the grounds before the sale, 'Harry, I have brought Smith down here to do my figuring and bidding for me.' . . Bo agreed to pay $20,000 for this land. Harry said 'Now, Bo, will you stick to that and bid it at the sale at that price?' And he is the only one who made a bid on the property and he bought it in for $20,000 . . Coming on back home Bo asked me if I had checked the title to that land and I told him I had not, and he then said 'Well I want you to check it.' I told him I would check it as soon as we got to town and I could get in the clerk's office, which I did . . So Bo, his wife, and I went in his car that same afternoon down near what is known as the Phil Causey store to Harry Hornbuckle's other farm in Worth County, which was to be sold that afternoon . . We came back in Bo's car and on the way back, Bo said 'I want you to go ahead and draw up all the necessary papers, including the deed, and let me know when you will be ready to go to Tifton to complete the deal with Harry.' I then drew up the necessary deeds and papers, called Bo and told him I was ready to complete the deal with Harry—this was some three or four days after the auction sale—and Bo came by in his car, picked me up and took me to Harry Hornbuckle's office in Tifton. . . While we were there at Harry's office, both of them, that is Bo and Harry, denied that they were in-

debted to me; but Harry Hornbuckle said to Bo Patterson 'Bo, I will match any amount, which you will agree to pay Smith for his services in the handling of this sale and these other matters he had handled—I don't feel like I am indebted to him in view of the fact that you stated to me, in his presence, on the date of the sale you brought Smith to the sale to do your figuring and bidding but I will match any amount you agree to pay him.' . . I said I wrote that $250 check, which Mr. Patterson signed and gave me when we were in Macon—I didn't cash it sooner because, as I said, it was given me on condition, and the reason I didn't cash that check before this date was because it was given to me on condition—the condition was that Harry Hornbuckle was to give me a check for a like amount, and I didn't cash Bo's check until Harry Hornbuckle gave me his check for the same amount for that was the way the check was given to me—that was the condition the check was given to me on; and my deposit slips will show . . that Bo's check—that $250 check you have—and Harry Hornbuckle's check in a like amount were deposited on the same day or within a day of each other— that check represents what he agreed to pay me for my services."

H. A. Hornbuckle testified, in part, as follows: "After the property was sold at auction—the day it was sold—the question as to who was to pay Mr. Smith came up between Mr. Patterson, Mr. Smith and I—we were arguing about it and that's when I told him I would match anything that he would give. As to whether Mr. Patterson and I then agreed to equally pay it, I would not say definitely about that. I paid the $250 that I agreed to, and it is my recollection that he was supposed to pay the same. I paid Mr. Smith $250. . . As to whether Mr. Patterson was taking the position that he did not owe Mr. Smith any commission at all—that he was buying the land, well, let me explain it this way—the way I understood—I first listed the land with Smith to sell it and then, when we came up to the sale, Patterson said Smith was representing him. He was working for us both. I did not like that too much and that was my reason for complaining about having to pay Smith anything."

The jury returned a verdict for the plaintiff, and judgment was rendered accordingly. The defendant moved for a new trial, and excepted to the overruling of his motion, which consists of the usual general grounds.

The plaintiff was not entitled to recover under any theory presented by the evidence. If the testimony of the defendant, as substantiated by Hornbuckle, is taken as true, the check was given in accordance with an agreement as to payment for services rendered, and the defendant should have prevailed. If, instead, the testimony of the plaintiff is considered as showing the true nature of the transaction, it shows that the plaintiff entered into a conspiracy with the defendant whereby the plaintiff gave the defendant the check for $250 so that the defendant could show the check to Hornbuckle, making him think the plaintiff had paid the defendant $250, and misleading and deceiving him, so that he would pay the defendant $250, after which the defendant would return the check to the plaintiff, and relieve the plaintiff of any obligation to him for any services that may have been rendered. It is a well-settled principle of law that no court, either of law or equity, will lend its aid in support of an action by either party where the same is dependent upon an illegal or immoral transaction, but instead, will leave the parties where it finds them. See *Howell* v. *Fountain*, 3 *Ga.* 176(1) (46 Am. D. 415); *White* v. *Crew*, 16 *Ga.* 416(1); *Heineman* v. *Newman*, 55 *Ga.* 262 (21 Am. R. 279); *Garrison* v. *Burns*, 98 *Ga.* 762, 763 (26 S. E. 471); *Flournoy* v. *Highlands Hotel Co.*, 170 *Ga.* 467, 471 (2) (153 S. E. 26); *Quinton* v. *Millican*, 196 *Ga.* 175 (26 S. E. 2d, 435); *Somers & Co.* v. *Cranston & Co.*, 20 *Ga. App.* 154(2) (92 S. E. 772); *Allen* v. *Owen*, 60 *Ga. App.* 210 (3 S. E. 2d, 467); *Sheehan* v. *City Council of Augusta*, 71 *Ga. App.* 233, 240 (30 S. E. 2d, 502); Code, § 20-501. A verdict being demanded for the defendant, the trial judge erred in overruling the defendant's motion for a new trial.

*Judgment reversed. Felton and Worrill, JJ., concur.*